**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **BRENDA JOHNSON** § § § | |
| § | **CIVIL NO.2:17-cv-116** |
| **VS.** § § § § | |
| **CITY OF TYLER, TEXAS** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I. JURISDICTION AND PARTIES**

1. Jurisdiction of this Court is invoked pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, providing for relief against discrimination on the basis of disability in employment. Plaintiff also seek relief pursuant to the Family Medical Leave Act.

2. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

   (a) a charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

   (b) A Notification of Right to Sue was received from the EEOC on January 05, 2017.

   (c) This Complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

3. Plaintiff, Brenda Johnson, is a citizen of the United States and the State of Texas who resides in Smith County, Texas.

4. All the discriminatory employment practices alleged herein were committed within the State

of Texas.

5. Defendant, CITY OF TYLER is a Texas municipality located in Smith County, Texas. The CITY OF TYLER may be served by delivering a copy of the Complaint to its City Manager, Ed Broussard at 212 N. Bonner Ave., Tyler, Texas, 75702.

6. CITY OF TYLER is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

7. CITY OF TYLER is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, 42, U.S.C. § 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. CITY OF TYLER employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

## II. STATEMENT OF FACTS

9. Plaintiff, Brenda Johnson, was employed by the CITY OF TYLER from 1992 until her termination on March 21, 2016. Ms. Johnson was employed as the Manager of Neighborhood Services when she was diagnosed with lupus on May 9, 2013. After her lupus diagnosis, Plaintiff experienced difficulties in the morning which prevented her from arriving to work at a prescribed time. A well-known symptom of the lupus disease is that the symptoms are worse in the morning.[1]

10. Plaintiff fully disclosed the nature and extent of her lupus condition to her supervisor, Gary Swindle; however, Swindle began to retaliate against Plaintiff after her lupus diagnosis. Swindle began to subject Plaintiff to stricter scrutiny regarding her work hours even though Plaintiff was a salaried/exempt employee.

11. On several occasions, Plaintiff requested that she be allowed to work from home when her

---

[1] "Many lupus patients experience joint stiffness, especially in the morning." The Lupus Center at Johns Hopkins University. https://www.hopkinslupus.org/lupus-info/lupus-signs-symptoms-comorbidities/

PLAINTIFF'S ORIGINAL COMPLAINT - PAGE 2 OF 9

lupus flared up, especially in the mornings. Her requests to work from home were refused by Swindle and he continued his pattern of harassment of Plaintiff because of her lupus condition.

12. On April 1, 2015, Plaintiff was given her Annual Review conducted by Susan Guthrie her Key Leader. Plaintiff received an annual productivity pay increase of 4%.

*13.* On June 8, 2015, Plaintiff met with Swindle. At that time, Swindle presented Plaintiff with what he described would be her new job assignments as Neighborhood Services beginning that day. When Plaintiff asked him for what reason, as my current job duties were reviewed and approved during my annual performance evaluation with the previous Key Leader just a couple of months ago in April. Swindle immediately retorted in a very loud and menacing voice "because of the bad things you have done". Plaintiff asked him several times to explain what he meant by that statement, but he refused to given an explanation.

*14.* Plaintiff was overwhelmingly horrified by the threatening tone of Swindle's voice charging her with some horrible unknown and unsubstantiated infraction. Plaintiff requested additional time to review the document before acknowledging informed consent by her signature. Swindle stated that her refusal to sign the job assignment at that time 'would constitute in-subordination on her part and grounds for termination'. He further stated 'since you refuse to sign this, we need to go to HR right now.

15. Upon arrival at HR, Swindle was waiting for Plaintiff at the front door of City Hall and stated we will be meeting with Rose Ray, HR Manager. Swindle gave the Job Assignment to Ms. Ray, who took less than 60 seconds to glance over it before making the statement that Plaintiff had to sign it right then or she could be fired. To be clear I was understanding correctly, Plaintiff asked Ms. Ray "are you saying that by my refusing to giving informed consent to a binding agreement for which I've had no prior knowledge nor been given any explanation of the contents, will result in my being fired. She said *"yes"*. Plaintiff asked her if she could speak to the HR

Director, but was told that she was not available. Due to the fear of losing her job, at that time Plaintiff signed the document and accepted the demotion.

16. Despite the fact that Plaintiff was a salaried/exempt employee, on July 17, 2015, Swindle sent email to Plaintiff (and carbon copy HR Director) which stated: "Effective July 20, 2015 Brenda Johnson will be assigned office/duty hours will be 8:30 am to 5:30 pm."

17. On July 21, 2015, Plaintiff received email from Swindle that stated: "You notified me at 9:30 am by text that you would be out on PTO today. I want to remind you of your acknowledgement on 7-17-15 of your duty/office hours and the requirement to let me know an hour in advance, if possible if you are not going to make it in." Despite Plaintiff's need for flexibility in the mornings due to her lupus condition, Swindle failed to accommodate her need to have flexible morning hours and continued his campaign of retaliation against Plaintiff because of her lupus condition.

18. On July 21, 2015, Plaintiff was placed on FMLA Leave by Dr. Vasquez due to stress, exacerbation of Lupus disorder, rheumatoid arthritis, bluffed vision, loss of energy, and depression.

19. On October 5, 2015, after being released by her physician, Plaintiff returned to work. Plaintiff was unable to log into the City computer system in additional to the HUD IDIS system. Correspondence with HUD Representative Ellen Melendez confirmed that approvals and other actions were taken/conducted using her official HUD password while she was on FMLA. Jeremy English, City of Tyler IT Specialist, confirmed that while I was on FMLA, Larry Everett requested, and it was approved to unlock my City of Tyler account. Benny Yazdanpanahi, CIO, also stated that Gary Swindle was aware of the request and approved it also.

20. On October 13, 2015, Plaintiff met with her former Key Leader, Susan Guthrie, at her request to complete my Employee Evaluation which was due on 4-1-15. Ms. Guthrie's comments

were:

> "During my tenure as Brenda's supervisor, I found her to be very engaged and proactive in her leadership style. I observed her actively gaining participation from her team for key processes (i.e., business planning, budget, PEP, events). She was responsive to my requests for information and accommodating to changes in schedules. All reports and requests were fulfilled in a timely manner. I observed significant improvement in her employee survey participation rates and overall scores. I attended several departmental events, including a Thanksgiving lunch, an outdoor picnic and a Christmas event. Morale and team camaraderie appeared high. Her PEP scores improved dramatically during this time period. Additionally, the department received its best ever review from HUD: with NO FINDINGS. During the time of my supervising Brenda, there were complaints from two employees about favoritism and a negative attitude by one of Brenda's direct report. HR was involved and an investigation done. There were no findings or evidence that supported the claim."

21. On October 21, 2015, Plaintiff met with Ed Broussard, City Manager, regarding my concerns of job security, harassment by Swindle, hostile work environment, and lack of support and poor leadership from Swindle. Mr. Broussard recommended that Plaintiff address her health condition with HR and to request reasonable accommodation with regard to the essential job functions of my current position. Additionally, he advised that he would be meeting with Swindle to discuss some of the concerns in our discussion.

22. On October 26, 2015, Plaintiff met with Renissa Wade, HR Director to discuss and request reasonable accommodations.

23. On November 5, 2015, Plaintiff's physician faxed and mailed the Reasonable Accommodation Physician Questionnaire to HR.

24. On November 9, 2015, Plaintiff submitted Reasonable Accommodation Request Form to HR.

25. On January 21, 2016, Plaintiff met with Renissa Wade HR Director to review the Reasonable Accommodations documents.

26. On January 26, 2016, Plaintiff met with HR Director Renissa Wade, ADA City Attorney Sharon Roberts, Key Leader Gary Swindle to finalize and sign Reasonable Accommodations

were:

> "During my tenure as Brenda's supervisor, I found her to be very engaged and proactive in her leadership style. I observed her actively gaining participation from her team for key processes (i.e., business planning, budget, PEP, events). She was responsive to my requests for information and accommodating to changes in schedules. All reports and requests were fulfilled in a timely manner. I observed significant improvement in her employee survey participation rates and overall scores. I attended several departmental events, including a Thanksgiving lunch, an outdoor picnic and a Christmas event. Morale and team camaraderie appeared high. Her PEP scores improved dramatically during this time period. Additionally, the department received its best ever review from HUD: with NO FINDINGS. During the time of my supervising Brenda, there were complaints from two employees about favoritism and a negative attitude by one of Brenda's direct report. HR was involved and an investigation done. There were no findings or evidence that supported the claim."

21. On October 21, 2015, Plaintiff met with Ed Broussard, City Manager, regarding my concerns of job security, harassment by Swindle, hostile work environment, and lack of support and poor leadership from Swindle. Mr. Broussard recommended that Plaintiff address her health condition with HR and to request reasonable accommodation with regard to the essential job functions of my current position. Additionally, he advised that he would be meeting with Swindle to discuss some of the concerns in our discussion.

22. On October 26, 2015, Plaintiff met with Renissa Wade, HR Director to discuss and request reasonable accommodations.

23. On November 5, 2015, Plaintiff's physician faxed and mailed the Reasonable Accommodation Physician Questionnaire to HR.

24. On November 9, 2015, Plaintiff submitted Reasonable Accommodation Request Form to HR.

25. On January 21, 2016, Plaintiff met with Renissa Wade HR Director to review the Reasonable Accommodations documents.

26. On January 26, 2016, Plaintiff met with HR Director Renissa Wade, ADA City Attorney Sharon Roberts, Key Leader Gary Swindle to finalize and sign Reasonable Accommodations

approval documents.

27. On March 21, 2016, Plaintiff met with Swindle, Roberts, and Wade and was given termination letter.

### III. CLAIMS FOR RELIEF

### (A) AMERICANS WITH DISABILITIES ACT

28. The allegations contained in Paragraphs 1 through 27 are hereby incorporated by inference.

29. From the time of Plaintiff's lupus diagnosis, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2). More particularly, Plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of such an impairment, and was regarded by the CITY OF TYLER as having such an impairment.

30. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as a Manager of Neighborhood Services at CITY OF TYLER.

31. Despite her request for time off, CITY OF TYLER refused to make reasonable accommodation to Plaintiff.

32. CITY OF TYLER's failure to make reasonable accommodation to Plaintiff's physical disability constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment. CITY OF TYLER's actions constitute a violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A).

33. CITY OF TYLER failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation with Plaintiff.

34. In failing to make reasonable accommodation to Plaintiff's physical disability, CITY OF

TYLER acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

35. Alternatively, CITY OF TYLER terminated Plaintiff because of her actual or perceived disability in violation of the ADA.

### (B) FAMILY AND MEDICAL LEAVE ACT

36. The allegations contained in Paragraphs 1 through 27 are hereby incorporated by inference.

37. The FMLA contains two distinct provisions: (1) an entitlement clause and (2) an anti-discrimination clause. See 29 U.S.C. §§ 2612, 2615. The entitlement clause provides a series of entitlements which give certain rights to employees such as the right to have their job back once they return from a qualified leave. This FMLA also contains provisions prevent an employer from retaliating against an employee for taking FMLA leave. See 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b). Defendants are in willful violation of the FMLA. Defendants violated 29 U.S.C. §2612, §2614 and 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

38. Plaintiff availed herself of a protected right under the FMLA and was subsequently terminated. There is a causal connection between the Plaintiff's protected activity and Defendants' decision to terminate Plaintiff. Plaintiff's taking of FMLA was a motivating factor in the decision to terminate, and as such was a cause of Plaintiff's damages, as set forth below.

### IV. DAMAGES

39. As a direct and proximate result of CITY OF TYLER's discrimination on the basis of disability and violation of the ADA, Plaintiff has suffered lost wages and benefits and lost employment opportunities.

40. Defendant's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

41. Defendant intentionally inflicted extreme emotional distress upon Plaintiff by intentionally

discharging Plaintiff on the basis of her disability. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

42. Plaintiff's harm was a result of the Defendant's actual malice or reckless indifference to Plaintiff's protected rights, thus Plaintiff seeks exemplary damages.

43. Plaintiff is entitled to recover her reasonable and necessary attorney's fees pursuant to 42 U.S.C. § 2000e.

## V. JURY DEMAND

44. Plaintiff demands trial by jury.

## VI. RELIEF REQUESTED

45. Plaintiff requests the judgment of this Court against Defendant, CITY OF TYLER as follows:

   (a) Find and hold that Plaintiff has suffered from Defendant's acts of discrimination on the basis of her disability;

   (b) Order that Plaintiff be awarded the back pay she would have earned, with related monetary benefits and interest thereon, had she been reinstated to her position;

   (c) Order that CITY OF TYLER reasonably accommodate Plaintiff;

   (d) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

   (e) Requiring Defendant pay to Plaintiff damages for mental distress imposed upon Plaintiff through and as a result of the aforementioned discriminatory acts;

   (f) Award Plaintiff her attorney fees, including litigation expenses, and the cost of this action; and

   (g) Grant such other and further relief as may be just and proper.

Respectfully submitted,

\_\_\_/s/_____
William S. Hommel, Jr.
State Bar No. 09934250
HOMMEL LAW FIRM
1404 Rice Road, Suite 200
Tyler, Texas 75703
(903) 596-7100
(469) 533-1618 Fax

ATTORNEY FOR PLAINTIFF